**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Doreen Duhaime


    v.                                 Civil No. 09-cv-29-PB

Michael Astrue, Commissioner
Social Security Administration


**REPORT AND RECOMMENDATION**


Plaintiff Doreen Duhaime appeals the final decision of defendant Social Security Administration ("SSA") to discontinue disability insurance benefits she had been receiving because of depression and alcohol abuse in remission.  On April 28, 2005, the SSA notified plaintiff that her benefits had ceased effective September 2004, based on a determination that her medical condition had improved sufficiently to enable her to return to her past work.  Plaintiff appealed that decision, received a hearing before an administrative law judge ("ALJ"), and in March 2007 was again denied continued benefits.  The ALJ determined plaintiff's benefits should have ceased on August 15, 2006, however, rather than in September 2004.  After the Appeals Council denied further review, plaintiff commenced this action.

Plaintiff now seeks a remand, claiming the ALJ's decision was based on factual and legal errors.  For the reasons set forth below, I recommend that plaintiff's motion (document no. 9) be granted and the matter be remanded for further consideration.

<u>Discussion</u>

**1.  Statement of Uncontested Facts.**

Pursuant to this court's local rules, <u>see</u> United States District Court for the District of New Hampshire Rule 9.1(d), the parties filed a joint statement of facts (document no. 11) which are part of the record and which I have reviewed.  Only those facts relevant to the disposition of this matter are discussed below, as needed.

**2.  Standard of Review**

An individual seeking social security benefits has a right to judicial review of a decision denying the application.  <u>See</u> 42 U.S.C. § 405(g) (Supp. 2008).  The court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record.  <u>See</u> <u>id.</u>  The factual findings of the Commissioner shall be conclusive, as long as they are supported by "substantial evidence" in the record. <u>See</u> <u>Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991)

2

(quoting 42 U.S.C. § 405(g)).  "Substantial evidence" is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Currier v. Sec'y of HHS, 612 F.2d 594, 597 (1st Cir. 1980).  The Commissioner is responsible for resolving issues of credibility and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981) (reviewing court must defer to the judgment of the Commissioner).  The Court does not need to agree with the Commissioner's decision but only needs to determine whether it is supported by substantial evidence.  See id.

A final decision denying benefits must be upheld unless it is based on a legal or factual error.  See Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  If the ALJ made a legal or factual error, the decision may either be reversed or remanded to consider new, material evidence or to apply the correct legal standard.  See 42 U.S.C. § 405(g); see also Martin v. Astrue, No. C.A. 07-388A, 2008 WL 5111918, *2-3 (D.R.I. Dec. 2, 2008) (citing

authority about when to remand and when to reverse); <u>Evangelista</u> <u>v. Sec'y HHS</u>, 826 F.2d 136, 139 (1st Cir. 1987) (describing the newness/materiality and the good cause showings that justify a remand).

### 3. Analysis

Benefits awards like plaintiff received here are subject to periodic review to determine whether continuing benefits are justified.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 336 (1976) (explaining that a claimant has a "continuing burden" to demonstrate his disability); <u>see</u> <u>also</u> 42 U.S.C. § 423(f) (governing termination of benefits); 20 C.F.R. §§ 404.1589 & 404.1594(a) (outlining disability review process).  That periodic review looks at a claimant's medical condition to determine whether it has improved and, if so, whether that improvement positively affects the claimant's ability to work.  <u>See</u> 42 U.S.C. § 423(f); <u>see</u> <u>also</u> 20 C.F.R. § 404.1594; <u>Rice v. Chater</u>, 86 F.3d 1, 2 (1st Cir. 1996); <u>Shepherd v. Apfel</u>, 184 F.3d 1196, 1199 (10th Cir. 1999) (discussing the medical improvement standard). The regulations provide:

> A recipient of benefits . . . may be determined
> not to be entitled to such benefits on the basis
> of a finding that the physical or mental impairment
> on the basis of which such benefits are provided has

ceased, does not exist, or is not disabling only if
such a finding is supported by –

    (1) substantial evidence which demonstrates
that:

        (A) there has been any medical improvement
        in the individual's impairment or combination
        of impairments (other than medical improvement
        which is not related to the individual's ability
        to work), and

        (B) the individual is now able to engage in
        substantial gainful activity . . ..

42 U.S.C. § 423(f).  Accordingly, the initial, critical question

is whether plaintiff's condition has improved since the prior

award of disability benefits, before the questions are considered

of whether the improved condition meets the listing requirements

for disability and how that affects the ability to do work.  <u>See</u>

<u>Rice</u>, 86 F.3d at 2 n.2 (explaining how meeting or failing to meet

a listing goes to the question of ability to work which is not

considered unless and until a medical improvement is first

established); <u>see</u> <u>also</u> <u>Cogswell v. Barnhart</u>, No. Civ. 04–171–P–S,

2005 WL 767171, *1–2 (D. Me. Mar. 14, 2005) (citing authority to

explain the need for actual physical improvement before ability

to work is considered).

    Plaintiff argues the ALJ erred by (1) assessing her

continuing disability status based on the incorrect age of 30

years old when she was 51 years old at the February 2007 hearing;
(2) discounting the opinion of her treating physician, Dr. Eric
Knight; and (3) finding medical improvement despite the lack of
substantial evidence to support that conclusion.  After carefully
reviewing the briefs and the record, I am persuaded that
defendant has not carried its burden of proving the conditions
which previously rendered plaintiff disabled have ameliorated,
see 20 C.F.R. § 404.1594(b)(2)-(5), and that plaintiff has
identified sufficient flaws in the ALJ's analysis to justify a
remand to reconsider the evidence.  I begin with the third
argument, which subsumes the second, because the first argument
concerning plaintiff's age is relevant to her ability to be
substantially gainfully employed, which vocational assessment is
not considered unless medical improvement has first been
established.  See 20 C.F.R. §§ 404.1594(a) & 404.1563.

      (a)  Medical Improvement

Mental impairments are reviewed according to the rules set
forth in the regulations, which require the ALJ to follow a
special technique to establish the existence of an impairment and
then to determine its severity.  See 20 C.F.R. § § 404.1520
(providing the five step disability evaluation process), §

6

404.1520a (governing mental disability in particular) &
§ 404.1594 (outlining steps to follow for continuing disability
review). The regulations require first that medical evidence
demonstrate the existence of an impairment, before the assessment
progresses to determining its severity and resulting functional
limitation. See id. § 404.1520a(b).[1] Similarly, at the periodic
review stage, the ALJ must first determine if there has been any
medical improvement in the impairment before progressing to the
analysis of any resulting functional limitations. Id. §
404.1594(a) & (b)(1).

The regulations define "medical improvement" as "'any
decrease in the medical severity' of an impairment, and any such
decrease 'must be based on changes in the symptoms, signs and/or
laboratory findings' associated with the claimant's impairment."
Rice, 86 F.3d at 2 (quoting 20 C.F.R. § 404.1594(b)(1)). To
determine whether plaintiff had medically improved, the ALJ was

---

[1]Once a medically determinable mental impairment has been
established, its severity is determined by referring to a set of
"Listings." See id. §§ 404.1520(a)(4)(iii)& 404.1525; see also
20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1(the "Listings"), §
12.00. The Listings set forth medical findings, referred to as
"Paragraph A" criteria, and impairment-related functional
limitations, referred to as "Paragraph B" criteria. See id. §
12.00A. There are additional functional criteria set forth in
Paragraph C, which become relevant only if the Paragraph B
criteria are not satisfied.

required to compare the medical evidence from June 1999, when she
was initially found disabled, to the medical evidence current at
the time of his review, to see if there were any "*changed
symptoms, signs and laboratory findings* [which] are the only
relevant indicia of medical improvement under the regulations."
Id. (reversing for legal error because ALJ found claimant no
longer met a listing but failed to compare the medical evidence
(emphasis in original)); see also 20 C.F.R. § 404.1594(b)(7)
(defining point of comparison) & § 404.1594(c) (providing steps
to follow to determine medical improvement).  My review of the
record indicates the ALJ did not make the requisite comparison.

**(i) The ALJ's Findings**

Without citing any diagnostic tests, professional
evaluations or other evidence that could be understood as
depicting a symptom, sign or laboratory finding, the ALJ found:

> The record shows no continuing limitations
> in basic work activities from her alcohol
> abuse.  As for her depression, the record
> shows improvement in the criteria in Section
> 12.04B of the Listings, as discussed below.

Certified Copy of the Record ("CR") at 16.  The direct cite to
subsection 12.04B, which describes functional limitations,
unambiguously reveals the error in the ALJ's analysis, which

8

assessed plaintiff's "medical improvement" based on her
functional limitations without first determining whether there
were documented changes of any improved medical signs or
symptoms.  The ALJ explained plaintiff's medical improvement as:

> I do not find more than mild limitations as
> of August 15, 2006 in the claimant's performance
> of activities of daily living, her social
> functioning and her concentration, persistence
> and pace to complete tasks.

Id. at 19.  These are the Listings' category B criteria that are
not to be assessed unless and until medical improvement in signs,
symptoms and laboratory findings has been documented.  This focus
on whether plaintiff met the Listings criteria for functional
limitation constitutes reversible error.  See Rice, 86 F.3d at 2–
3 & n.2 (reversing because ALJ erroneously focused on whether the
claimant's medical condition continued to meet the Listings
rather than focusing on whether laboratory findings demonstrated
improvement).

The law clearly requires that medical improvement be
established first before the subordinate issue of whether that
improvement is related to functional ability to work is
addressed.  See id. ("The question whether a prior listing
continues to be met plays at best a subordinate role in

determining medical improvement and is not determinative."). Although the ALJ concluded plaintiff had severe impairments in the form of her depression[2] and her fibromyalgia, see CR at 21, he still determined that "the medical evidence establishes that there has been improvement in the claimant's medical impairment since August 15, 2006 which is related to the ability to work," id., without supporting that conclusion with any record citation. It is unclear what medical evidence he refers to in making that conclusion.

### (ii)  The Medical Evidence

The regulations are specific about what types of medical evidence constitutes "symptoms, signs and laboratory findings." See 20 C.F.R. §§ 404.1508 (describing need for medical evidence to show impairment) & 404.1528 (detailing examples of signs and laboratory findings).  In particular, evidentiary proof must be more than a claimant's own description of his or her impairment, see id., and must include:

---

[2]The ALJ found "the impairment to remain a severe one as she is expected to be vulnerable to one or two episodes of decompensation when faced with a lot of stress," yet still concluded there was  "medical improvement in the claimant's depression."  CR at 19.  The ALJ provides no explanation for this inherent contradiction.

> Psychiatric signs are medically demonstrable
> phenomena that indicate specific psychological
> abnormalities, e.g., abnormalities of behavior,
> mood, thought, memory, orientation, development,
> or perception.  They must also be shown by
> observable facts that can be medically described
> and evaluated.. . .  Laboratory findings are
> anatomical, physiological, or psychological
> phenomena which can be shown by the use of
> medically acceptable laboratory diagnostic
> techniques.  Some of these diagnostic techniques
> include chemical tests, electrophysiological
> studies (electrocardiogram, electroencephalogram,
> etc.), roentgenological studies (X-rays), and
> psychological tests.

Id.  Both initially and on reconsideration, a "special technique"
must be followed to evaluate the mental disability, see id. §
404.1520a(b), which then must be documented in the decision to
show what evidence medically establishes the mental disorder.
See id. § 404.1520a(e).  Nothing in the ALJ's decision indicates
that he followed the "special technique" required by the
regulations to determine whether plaintiff's mental disability
was continuing.  See id. & § 404.1520a(b).

At the comparison point of decision, June 2, 1999, plaintiff
was found to be suffering from alcohol abuse and depression, as
described in the regulations under Listing 12.04 for "Affective
Disorders."  See CR at 23 (10/5/01 disability determination
report with onset date of 6/2/99).  At that time, Dr. Craig A.

Dailey found plaintiff suffered from an affective disorder, anxiety-related disorder, and substance addition disorder.  <u>See</u> CR at 118 (citing Listing §§ 12.04, 12.06 and 12.09).  Dr. Dailey identified plaintiff as suffering from anhedonia, sleep disturbance, decreased energy, difficulty concentrating and suicidal thoughts.  CR at 121.  He also found plaintiff to be suffering from recurrent severe panic attacks and alcohol dependance in partial remission.  <u>Id.</u> at 123 & 126.  Dr. Dailey based his findings on the medical records from Dr. Benton, who treated plaintiff for a long time, and the Elliott Hospital, where she was hospitalized after her second suicide attempt.  <u>Id.</u> at 130.  He also noted that plaintiff had been treated at Hampstead Hospital for acute detoxification for her alcohol dependence, and was receiving medication and counseling as part of her treatment.  <u>Id.</u>  Based on this medical evidence, Dr. Dailey concluded plaintiff had a severe mental disability beginning June 2, 1999 and continuing through his October 2001 evaluation.  <u>Id.</u> at 118-131 (plaintiff's "Psychiatric Review Technique" form).

By comparison, at the February 2007 hearing, the ALJ found that plaintiff's mental disorders were not disabling as of August

15, 2006.  In support of that conclusion, the ALJ relied heavily
on notes from Dr. William E. Evans, Jr., who saw plaintiff a few
times between August 2005 and October 2006 apparently at the
request of Medicare/Medicaid.  At the initial August 2005 visit,
Dr. Evans completed a "Psychiatric Evaluation/Consultation" of
plaintiff.  See CR at 383-84.  Dr. Evans assessed plaintiff as
follows:

> Axis I:   Social phobia, provisional.
>           Alcoholism in remission.
>           Rule out pre-morbid learning disabilities.
>
> Axis II:  Personality disorder, NOS, provisional.
>           Rule out Borderline Personality Disorder.
>
> Axis III: Fibromyalgia and status post hysterectomy.
>           Methadone dependent.
>
> Axis IV:  Deferred.
>
> Axis V:   60.

Id. at 384.  He did not complete another assessment of plaintiff,
and the record only contains notes from the other visits he had
with plaintiff.  Id. at 361-65.  The notes reflect some
improvement ("no symptoms of suicidality or serious depression or
anxiety," id. at 365), but some continuing problems (sleep
difficulties, methadone dependent and drug seeking, see id.).[3]

---

[3]Significantly, Dr. Evans also noted plaintiff's as "bright
and euthymic," CR at 363, and plaintiff reported sleeping only a

This evidence is at best mixed, and appears to be consistent with
plaintiff's pattern of "waxing and waning" without sustained
improvement which the ALJ found prior to August 15, 2006.  See CR
at 17.

Dr. Evans referred plaintiff for counseling with John Colby,
who completed a "Consumer Intake Assessment" in August 2005 that
reflected her history with drug and alcohol abuse and her self-
reported problems with social phobias, depression and anxiety.
See id. at 386-96.  Mr. Colby's "mental status exam" opinion was
fairly good, stating that plaintiff was cooperative and
appropriate throughout the interview, that her emotions, activity
level and speech were normal, that her judgment was sound, that
there was no apparent homicidal or suicidal ideation, and that
her insight was keen and she was oriented in person, place and
time.  See id. at 386.  Despite this report, plaintiff went to
Colby for psychotherapy for her flat affect, social phobia, and
chemical dependence problems.  See id. at 392.  In July and
August 2006, Colby noted that plaintiff continued to need
supportive psychotherapy, that included "reality-based cognitive

---

few hours a day without feeling tired, CR at 419, which could be
considered medical signs for manic syndrome, a type of affective
disorder.  See Listing 12.04(A)(2).

messages that promote increased adaptive action" and "explor[ing] substance abuse and recovery." Id. at 400–01. One of Colby's last treatment notes, from September 2006, indicates plaintiff reported feeling "full of life" but still needed supportive psychotherapy with a treatment goal of "exploring her medication management and discussing relapse prevention strategies." Id. at 366. Like Dr. Evans' opinion, Mr. Colby's assessment was of mixed improvement, that could fairly be understood as cautiously optimistic.

Aside from these treatment notes, there is no other medical evidence cited in support of the ALJ's disability cessation determination. Neither Dr. Evans nor Mr. Colby completed a Psychiatric Review Technique form or similar psychiatric profile evaluation form that could be understood as a laboratory finding or symptom, either in August 2006 or at any time after the initial August 2005 evaluation.[4] Notes from both evaluators stop in October 2006. The ALJ appears to have relied heavily on

_____

[4]There is a one other Psychiatric Review Technique form, dated July 22, 2004, when plaintiff was determined to still be disabled based on her affective disorder. See CR at 188D–188H. Because is was done two years before the critical August 2006 date, it is irrelevant to plaintiff's disability status at issue now other than perhaps to illuminate the dearth of medical evidence supporting the ALJ's finding.

plaintiff's self-report to Dr. Evans in August 2006 that she
liked her job, was happy, and was decreasing her methadone
dosage.  CR at 16.  He cites several behavioral examples of her
improvement, including dining in restaurants, remaining upbeat
and euthymic, and abstaining from alcohol consumption, id., and
concluded this "evidence is consistent with very significant
improvement in the claimant's depression since the comparison
point of decision."  Id. at 17.  This reliance on plaintiff's own
account of her improvement is undermined by the ALJ also having
found that plaintiff was not credible.  See id. at 18 & 21
(discrediting testimony about her alcohol use and her pain).

Without more medical evidence of improvement, I cannot find
that the ALJ's decision is based on substantial evidence.  He was
required to assess specific symptoms of affective disorders, such
as:  sleep disturbance, energy and activity levels, ability to
concentrate, feelings of self-worth, id. at 121, unpredictable
onset of anxiety or panic, id. at 123, and substance dependence,
id. at 126.  See 20 C.F.R. § 1520a(e) (requiring the ALJ to
document application of the mental disability determination
technique); see also Listings § 12.04(A) (setting forth medical
criteria to show affective disorders); Santiago v. Barnhart, 386

16

F. Supp. 2d 20, 23 (D.P.R. 2005) (requiring decision to actually compare cited evidence of prior and current medical conditions to show improvement).  Though the evidence showed plaintiff was no longer suicidal and no longer abused alcohol, it also showed that she continued to be anxious in a variety of social settings, CR at 19 & 415-16, and continued to suffer from addiction problems.[5] See e.g. CR at 365-66 (treatment notes focusing on plaintiff's drug dependency), 412 & 416-17 (plaintiff's testimony about her drug addictions,  and therapy).  The ALJ concluded plaintiff continued to be severely impaired by depression, CR at 21 (finding no. 3) and yet still determined, with no record citation to support the finding, that her depression had medically improved.  See id.  These conflicting conclusions simply cannot be understood as substantial evidence.

Significantly, the ALJ appeared to have given no weight to Dr. Eric Knight's medical opinion about her impairments, which

---

[5]The ALJ specifically found plaintiff not to be credible about her use of alcohol, CR at 18, yet also decided to terminate her benefits in part because of her testimony that her alcohol did not impact her ability to work.  See CR at 19.  This selective finding of credibility is inherently contradictory and erodes the evidentiary basis of his decision.

also constitutes legal error.[6]  The regulations require that all
medical opinions be evaluated, See 20 C.F.R. § 404.1527(b), and
that treating physician's opinions be weighed more heavily than
consulting or examining physician's opinions because treating
physicians are "most able to provide a detailed, longitudinal
picture of your medical impairment(s)."  See id. § 404.1527(d);
see also Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)
(explaining weight to be accorded various medical opinions).
Since Dr. Knight was plaintiff's primary care physician whose
treatment relationship with plaintiff was substantially longer
than either Dr. Evans or Mr. Colby, his opinion should have been
considered, if not more heavily weighed, in the continuing
disability evaluation.  See id.

Dr. Knight stated in his February 2007 evaluation of
plaintiff that her "Neuropsychiatric issues – interpersonal
interactions and crying with stress, [and] difficulties due to
depression, possible bipolar disorder" were other medical

---

[6]The ALJ relies on Dr. Knight's opinion only in the context
of plaintiff's residual functional capacity ("RFC").  See CR at
19.  Dr. Knight completed a "Medical Assessment of Ability to do
Work–Related Activities (Physical)" on February 7, 2007, see id.
at 355–59, determining plaintiff had several RFC limitations
which the ALJ did not accept.  See id. at 19.  The record does
not contain any other physical or mental RFC assessment.

findings that supported his assessment that plaintiff would

likely miss more than four days of work per month.  <u>Id.</u> at 359.

Dr. Knight opined that plaintiff:

> has been a patient in our office since 7/12/2004.
> At that time she reported a history of Major
> Depression with a question of Bipolar Disorder.
> She also presented a history of Rheumatoid
> Arthritis, Fibromyalgia and Melanoma.  Since
> that time new chronic problems and diagnoses
> have included Hypothyroidism, Obstructive Sleep
> Apnea and Hypercolesterolemia.
>
> While I am unable to comment on any changes prior
> to July 2004, I can confidently state that Ms.
> Duhaime has not had any significant improvement
> in her function, including potential ability to
> maintain gainful employment, since I first met
> her.  If anything it appears that her capacity
> has decreased moderately over this period of time.

<u>Id.</u> at 360.  Though this assessment is not inconsistent with the

other substantial evidence in the record, the ALJ appears not to

have given Dr. Knight's opinion any weight when he concluded

plaintiff had medically improved.  Because his opinion was not

contradicted by other evidence in the record, the decision not to

factor Dr. Knight's opinion into the analysis constitutes legal

error.  <u>See</u> 20 C.F.R. § 404.1527(d)(2)-(6) (explaining how to

weigh opinions of treating physicians that are not inconsistent

with other substantial evidence); <u>see</u> <u>also</u> <u>Nguyen v. Chater</u>, 172

F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact . . .

19

are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); cf. Keating v . Sec'y of HHS, 848 F.2d 271, 276 (1st Cir. 1988) (rejecting treating physician's opinion when contradicted by other medical evidence).

The ALJ's failure to obtain medical evidence demonstrating medical improvement and his improper evaluation of Dr. Knight's opinion constituted legal errors. See Nguyen, 172 F.3d at 35 (reversing for legal error where ALJ's opinion was based on a "dearth of evidence" which ignored uncontroverted evidence from treating physician). The record does not contain substantial evidence that plaintiff's mental impairments have medically improved, and it was error for the ALJ to terminate her disability benefits without the requisite medical evidence of improvement. As a result, a remand is necessary to assess plaintiff's continuing disability in accordance with the regulations.

### (b)  Work-Related Factors

While the lack of medical evidence to support the ALJ's decision is a sufficient basis on which to remand this action, a few additional issues bear noting.

First, the ALJ erroneously found that plaintiff was a 30 year old, "younger individual" on August 15, 2006, the cessation date for her disability benefits.  <u>See</u> CR at 21 (finding no. 9).[7] In fact, plaintiff was 50 years old on August 15, 2006, and was 51 years old at the February 12, 2007 hearing.  She is a "person closely approaching advanced age," <u>see</u> 20 C.F.R. § 1563(d), which the regulations dictate may seriously affect an ability to adjust to other work when combined with a severe impairment and limited work experience.  <u>Id.</u>

Second, the record reflects that plaintiff also suffers from fibromyalgia and rheumatoid arthritis.  When a continuation of benefits is under review, all current impairments must be considered in addition to the previously determined impairment, to see what plaintiff's functional capacity to work is.  <u>See</u> <u>id.</u> § 404.1594(b)(5).  Defendant carries the burden of showing that plaintiff can engage in substantial gainful activity, considering

---

[7]Defendant argues the ALJ knew she was really older, since he stated her birthday correctly, <u>see</u> CR at 15 & 409, and saw her at the hearing.  Regardless of whether the ALJ's reference to her age as 30 instead of 50 was a typographical error or an actual mistake, the description of her as a "younger individual (20 CFR § 1563)," CR at 21, strongly suggests his analysis assumed she was in fact 30 years old.  On remand, plaintiff's correct age can be factored into the vocational analysis if the disability review progresses that far.

all of her impairments present at the time of the review.  Id. Accordingly, the AJL must factor the impact of plaintiff's pain and other limitations caused by her fibromyalgia and her rheumatoid arthritis into his assessment of her continuing disability status.  See id. & § 404.1594(b)(6); see also Avery v. Sec'y of HHS, 797 F.2d 19, 28-29 (1st Cir. 1986) (identifying factors relevant to the analysis of disabling pain).

     Finally, the ALJ should not have relied solely on the Grid to determine plaintiff's disability.  See CR at 21 (finding no. 12).  As discussed above, that reliance was premised on factual errors, including plaintiff's incorrect age and an incomplete evaluation of her impairments.  "The Grid is based on a claimant's exertional capacity and can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level."  Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994).  Without speculating about what conclusion will be found following a proper evaluation of plaintiff's impairments, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."  See Manso-Pizarro v. Sec'y HHS, 76 F.3d 15, 17 (1st

22

Cir. 1996).  On remand, if medical evidence establishes plaintiff has improved, vocational expert testimony regarding plaintiff's limitations, including both her pain and her alcohol abuse in remission, with properly framed hypothetical questions about her RFC considering her particular limitations, may be warranted. See Rose, 34 F.3d at 19 (instructing that reliance on the Grid is not dispositive where non-exertional limitations are present); see also Nguyen, 172 F.3d at 36 (reversing in part for reliance on the Grid which does not factor in pain); Arocho v. Sec'y HHS, 670 F.2d 374, 375 (1st Cir. 1982) (requiring ALJ to frame the hypothetical question to correspond to the medical conclusions so the vocational expert's answer is relevant).  In other words, there must be substantial evidence to support the assumptions the ALJ is making when asking the hypothetical question and upon which the vocational expert bases his opinion.  See id.; see also Searles v. Apfel, No. Civ. 99-548-B, 2000 WL 1745142, *7 (D.N.H. Oct. 13, 2000) (requiring ALJ to resolve ambiguities and to frame the hypothetical to accurately reflect claimant's limitations); Jolly v. Barnhart, 465 F. Supp. 2d 498, 504-05 (D.S.C. 2006) (reversing where vocational expert's hypothetical question failed to consider several parameters, including closely approaching

23

advanced age).

Conclusion

For the reasons set forth above, I find that the ALJ's decision is not supported by substantial evidence and recommend, therefore, that plaintiff's motion for remand (document no. 9) be granted and defendant's motion to affirm (document no. 10) be denied.  See Nguyen, 172 F.3d at 35.  I recommend this case be remanded for further consideration consistent with the analysis set forth herein.  See 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge


Date:  November 30, 2009

24

cc:     Jonathan P. Baird, Esq.
        T. David Plourde, Esq.